In re SPECIAL GRAND JURY (FOR ANCHORAGE, ALASKA).

No. 81–3527.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1982.

Decided March 17, 1982.

As Amended April 26, 1982.

Rehearing Denied May 21, 1982.

Christopher J. Hunt, San Francisco, Cal., argued, for appellants; William H. Bittner, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, Alaska, William A. Brockett, John W. Keker, Keker & Brockett, San Francisco, Cal., on brief.

William Martin, Dept. of Justice, San Francisco, Cal., for appellee.

Before FARRIS, FERGUSON and NELSON, Circuit Judges.

FERGUSON, Circuit Judge:

The appellants are the subjects of an investigation by a Special Grand Jury which has been sitting in the District of Alaska for approximately two years. They moved in the United States District Court for the District of Alaska for access to certain ministerial records [1] in the regularly maintained court files for that Special Grand Jury. The district judge denied the motion on the theory that the movants, because they had not been indicted, lacked standing to raise issues concerning alleged irregularity of the grand jury.[2] From that denial, the mov-

---

1. In particular, the records sought were:
    1. Any Order authorizing summons of a Special Grand Jury in the District of Alaska;
    2. Any Order authorizing extension of the Special Grand Jury;
    3. Roll sheets reflecting composition of the Special Grand Jury, attendance records of the Jurors, and any substitutions;
    4. Any written authority permitting a Special Prosecutor to present evidence to the Special Grand Jury;
    5. Records setting forth the method by which this Special Grand Jury was empaneled;
    6. Voting records, related to any decision to extend the life of the Special Grand Jury;
    7. All records of disclosure of names of persons receiving information about matters occurring before the Grand Jury; as

defined in Federal Rule of Criminal Procedure 6(e)(3)(A)(ii).

We call these records "ministerial" to reflect the fact that they generally relate to the procedural aspects of the empanelling and operation of the Special Grand Jury, as opposed to records which relate to the substance of the Special Grand Jury's investigation. Our use of this label should not be taken to indicate any settled judgment on our part that none of the records could be classified as "matters occurring before the grand jury" as that expression is used in Rule 6(e), Federal Rules of Criminal Procedure. In view of our disposition of this case, we need not reach that question with respect to any of the records sought.

2. The Government insists that the appellants asserted an intention to make such a challenge, and that such intention was the only motive for the request. The district court, also, was ap-

ants appeal to this court or, in the alternative, petition this court for a writ of mandate.

Four questions of first impression are presented for determination:

1. Whether parties not under indictment have standing to seek access to the ministerial records of a sitting grand jury.

2. Whether there is a common-law right, in members of the public, of access to ministerial records of a sitting grand jury.

3. Whether such a right may be asserted by bringing in the district court that has jurisdiction over the grand jury a motion seeking access to pertinent court files.

4. Whether an order denying such a motion is reviewable by appeal or by mandamus.

We decide, for the reasons explained below, that there is a limited right of access to grand jury records which interested members of the public have standing to assert. We also decide that the procedural device employed in the district court by the appellants was appropriate for the exercise of the access right, and that the order denying access was an appealable order. However, rather than attempting to specify the exact contours of the access right and to apply them to the request made in this case, we remand to the district court, which has custody of the documents sought and is in a better position to weigh the competing interests and fashion an appropriate order.

ANALYSIS

I. *Standing*

■ The district court denied the motion for access on the ground that the movants, as unindicted parties, were without standing to challenge the grand jury. One of the few points that is clear in this case is that such reasoning cannot support the district court's order. The error is plain: movants

were not seeking to challenge the grand jury, but to inspect ministerial court records. Their standing, if they had standing, did not spring from any alleged right to challenge the grand jury, but from their alleged common-law right of access to court records. The outcome of the standing inquiry, therefore, must depend on the existence and scope of the alleged common-law right—questions which do not seem to have been addressed by the district court and to which we now turn.

II. *Common-Law Right of Access to Public Records*

A. Access to Court Records.

■ The Supreme Court recently observed:

It is clear that the courts of this country recognize a general right to inspect and copy public records and documents. In contrast to the English practice . . ., American decisions generally do not condition enforcement on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies . . ., and in a newspaper publisher's intention to publish information concerning the operation of government . . . .

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978) (footnotes and citations omitted). The Court also noted that the access right is not often litigated,[3] and that "its contours have not been delineated with any precision." *Id.* at 597, 98 S.Ct. at 1311. The parties have not cited any case addressing the availability of such a right in the area of grand jury ministerial records, nor has our own research disclosed any. If such

---

parently under the impression that it was with that intention that the records were sought. Our disposition of this case, however, does not require us to consider what reasons the appellants may have had for their request.

**3.** The reason for this, no doubt, is that the records to which the access right extends are usually made public as a matter of course.

a right is available at all with respect to grand jury records, it must clearly be tempered by the long-standing rule of secrecy of the grand jury, and by the well-recognized policies behind that rule. Aside from whatever limitations that rule and its underlying policies suggest, however, we perceive no reason, nor has the Government offered any, why the public should not have access to the kind of records sought here. The importance of public access to judicial records and documents cannot be belittled. We therefore hold that, as members of the public, the appellants have a right, subject to the rule of grand jury secrecy, of access to the ministerial records in the files of the district court having jurisdiction of the grand jury. Absent specific and substantial reasons for a refusal, such access should not be denied.

B. Grand Jury Secrecy

In *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979), the Supreme Court stated that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." In a footnote, the Court went on to explain:

> Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye .... The rule of grand jury secrecy was imported with our federal common law and is an integral part of our criminal justice system .... Federal Rule Crim.Proc. 6(e) codifies the rule that grand jury activities generally be kept secret ....

*Id.* n.9. At issue now is whether the records sought by petitioners come within the scope of this secrecy doctrine as "records of such proceedings."

A starting point of analysis is the observation that the language of Rule 6(e), which the Court says "codifies" the secrecy rule, refers by its terms only to "matters occurring before the grand jury." This language could reasonably be understood to include only transcripts of grand jury testimony, votes of the jurors on substantive questions, and similar records, and not to include such records as, for instance, a "court order authorizing the summons of a Special Grand Jury." If the language of Rule 6(e) is construed in this narrow way, it is arguable that all of the items sought by appellants fall outside of its ambit. The argument is strengthened by the fact that the order proposed to the district court by the appellants explicitly excluded all "matters occurring before the Grand Jury," and provided that after the Government identified those portions of the requested records which it believed reflected such matters, the district court would review them and release them "only if they do not reflect matters occurring before the Grand Jury, or if they can be partially deleted to excise any such references." These considerations persuade us that at least some of the items listed by appellants in their request do not fall within the literal ambit of Rule 6(e), and that the order they sought would have assured that the secrecy rule, to the extent that it is codified in Rule 6(e), would not be violated.

However, it cannot be assumed, as appellants seem to do, that the whole grand jury secrecy doctrine is encapsulated within the four corners of Rule 6(e). It remains to be considered whether the proposed order would violate the secrecy doctrine even though it did not violate Rule 6(e). In this connection, the generally accepted rationale for the secrecy doctrine is illuminating. Five reasons have been prominently mentioned:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under

investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas, supra,* 441 U.S. at 219 n.10, 99 S.Ct. at 1673. While most of these reasons would appear to apply only to "matters before the grand jury" in the narrow sense suggested above as an interpretation of Rule 6(e), the second would seem to be implicated by disclosure of records identifying members of the grand jury. Item 3 of appellants' request is for "roll sheets reflecting composition of the Special Grand Jury, attendance records of the Jurors, and any substitutions." It would be reasonable to hold that this element of the request runs afoul of the doctrine of grand jury secrecy, in spite of the fact that it seems not to fall within the scope of the Rule 6(e) language.[4]

## III. *Procedure*

The Government does not contest the procedural device employed in the district court by the appellants to seek access to the records at issue. Arguably, however, by employing an inappropriate procedure, the appellants failed to invoke the jurisdiction of the court.

### A. The Problem.

Appellants sought their access below by filing a motion in the district court which had jurisdiction of the grand jury proceedings. Rule 2, Fed.R.Civ.P., provides that "there shall be one form of action to be known as a 'civil action,' " and Rule 3, Fed.R.Civ.P., provides that such an action is commenced by filing a complaint with the court. It appears to follow that the appellants did not commence a civil action in the district court. The Rules of Criminal Procedure include no provision that authorizes, on its face, intervention by a member of the

public in a grand jury proceeding.[5] Arguably, therefore, appellants never succeeded in invoking the jurisdiction of the court. The question arises whether the correct approach would have been to initiate a civil action by filing a complaint, naming as defendant either the court, or the clerk of the court, as custodian of the records at issue.

### B. Discussion.

It is sometimes possible for a nonparty to a grand jury proceeding to obtain access even to the transcripts of those proceedings. Thus, in *Douglas, supra,* a Central District of California grand jury had returned indictments against oil companies for antitrust violations. Other oil companies sought access to the grand jury transcripts for use as evidence in a civil antitrust action in the Arizona District Court. The procedure employed was to file a petition in the district court under whose auspices the grand jury had sat. The Supreme Court's analysis of the order granting access included, in a portion of the opinion joined by all nine Justices, the following illuminating remarks:

> The federal courts that have addressed the question generally have said that the request for disclosure of grand jury minutes under Rule 6(e) must be directed toward the court under whose auspices the grand jury was empaneled.... Indeed, those who seek grand jury transcripts have little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the transcripts.
>
> ... The records are in the custody of the district court .... We conclude, therefore, that, in general, requests for disclosure of grand jury transcripts

---

4. We refrain from specifically so holding. The district court will be in a better position to consider the exact nature of the records sought under Item 3, and to judge whether their disclosure would, in fact, threaten legitimate interests of the government, the grand jurors, or any other persons connected with the grand jury proceedings.

5. The rules do permit the jurisdiction of the court to be invoked by a third party in a roughly analogous context, however. Rule 41(e) allows a motion for return of property unlawfully seized in the district where the seizure took place. The rule apparently contemplates the entertainment of such a motion even though no civil or criminal action is pending in the court in which the motion is made.

should be directed to the court that supervised the grand jury's activities.

*Id.* at 224–26, 99 S.Ct. at 1675–76 (citations and footnote omitted). We see no reason why the procedure should be different when ministerial records, rather than transcripts, are sought.

Nor do we detect any significant difference between the procedure that was followed in this case and the procedure employed in *Douglas.* In that case, the request was styled a petition, with the United States named as sole respondent. In the present case, a docket had already been opened by appellants here, in which they are named as petitioners, and the United States is named as respondent. The prior entries on that docket represent attempts to seek relief from various activities of the grand jury—the quashing of subpoenas, the issuance of protective orders, etc. The present request was filed as a motion under the same docket number.

The courts have not reached a settled view about appropriate procedures when a third party seeks to assert some interest in a criminal proceeding. Occasionally, a third party seeks to protect its own privacy interest by preventing the public disclosure of evidentiary material. *E.g., United States v. Hubbard,* 650 F.2d 293 (D.C.Cir.1980). Alternatively, members of the press seek relief from orders that restrict their activities during a criminal trial. *Id.* at 308 n.57 (collecting cases). The press has sometimes been allowed to seek relief from such orders in the circuit court by mandamus, *United States v. Sherman,* 581 F.2d 1358, 1360 (9th Cir. 1978), but other courts have disapproved such an approach, because "it is the trial court and not [the circuit court] that should engage in the initial consideration of the interests at stake." *Hubbard, supra,* 650 F.2d at 309. The Third and Fifth Circuits have approved a simple motion procedure when the press seeks access to documents and other evidentiary material in a criminal trial. *United States v. Gurney,* 558 F.2d 1202 (5th Cir. 1977), *cert. denied,* 435

U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *United States v. Schiavo,* 504 F.2d 1, 5 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974). When the press sought access to the "White House tapes," a motion was filed in Judge Sirica's court. He treated the matter as a "miscellaneous civil proceeding" and entered orders which were appealed to the D.C. Circuit, whose decision was reversed on the merits by the Supreme Court. *United States v. Mitchell,* 551 F.2d 1252 (D.C. Cir.1976), *reversed sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

In light of this procedural confusion, the soundest course would seem to be that suggested by the Supreme Court's analysis in *Douglas,* quoted *supra.* *Douglas* is closely analogous to the present case, the only difference being that in *Douglas* transcripts were sought, whereas here, ministerial records were sought. Also, the decision below in *Douglas* is a decision of this court. *Petrol Stops Northwest v. United States,* 571 F.2d 1127 (9th Cir. 1978), is a decision of this court. The grounds on which the Supreme Court reversed do not reduce its strength as precedent on the question at issue.

## IV. *Appeal and Mandamus*

The decisions in *Douglas, supra,* provide some authority for the proposition that the order in this case is appealable. In *Petrol Stops Northwest, supra,* this court entertained an appeal from an order granting disclosure, and the Supreme Court subsequently reversed on the merits. We have already pointed out the close procedural analogy between this case and *Douglas.* In that case, however, neither this court nor the majority of the Supreme Court addressed the issue of appealability. Concurring in *Douglas,* Justice Rehnquist insisted that the question needed to be addressed. Doing so himself, he came to the provisional conclusion [6] that the order was appealable, reasoning that "an order such as is involved

---

6. The Justice was merely "satisfied for now" with his analysis, which was arrived at without benefit of briefing or any discussion by the court of appeal.

in this case disposes of all the contentions of the parties and terminates a separate proceeding before the grand jury court," and "is therefore appealable as a 'final decision' under 28 U.S.C. § 1291." 441 U.S. at 233, 99 S.Ct. at 1680 (Rehnquist, J., concurring). *See also Illinois v. Sarbaugh*, 552 F.2d 768, 773 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). We follow that reasoning and hold that the order in this case is appealable.

CONCLUSION

The decision of the district court that appellants lacked standing to seek access to the ministerial records of the grand jury was erroneous, and for that reason we reverse. We decline to attempt, on a cold record, any detailed characterization of the scope of the public access right as it applies in this context. The question is one of first impression, and the court with supervisory power over the grand jury, custody of the records at issue, and direct acquaintance with the relevant factual background is in a better position than we are to work out the details of the access doctrine in an appropriate way. For that reason, we REVERSE AND REMAND.