In re SEARCH WARRANT FOR SECRE-
TARIAL AREA OUTSIDE OFFICE OF
Thomas GUNN, McDonnell Douglas
Corporation.

Appeal of PULITZER PUBLISHING
COMPANY and Edward H. Kohn.

No. 88–2039.

United States Court of Appeals,
Eighth Circuit.

Submitted July 29, 1988.
Decided Aug. 26, 1988.

Stephen B. Higgins, St. Louis, Mo., for appellants.

Joseph Aronica, Asst. U.S. Atty., Alexandria, Va., for appellee.

Veryl L. Riddle, St. Louis, Mo., for amicus curiae McDonnell Douglas.

Norman London, St. Louis, Mo., for amicus curiae Thomas Gunn.

Before HEANEY, McMILLIAN and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

The Pulitzer Publishing Co., the publisher of the *St. Louis Post–Dispatch,* a daily newspaper of general circulation in the St. Louis metropolitan area, and Edward H. Kohn, the newspaper's assistant city editor for projects (hereinafter appellants), appeal from a final order entered in the District Court[1] for the Eastern District of Missouri denying their motion to immediately unseal the affidavits and other materials attached to two search warrants. *In re Search Warrant for Secretarial Area,* No. 88–MISC–260 (E.D.Mo. July 15, 1988) (order). For reversal appellants argue the district court erred in denying the motion to unseal because no compelling government interest justified denial of their right to immediate access to these documents and in failing to make specific findings and to make line-by-line redactions of the documents. For the reasons discussed below, we affirm the order of the district court.

FACTUAL BACKGROUND

On June 14, 1988, federal agents simultaneously served and executed more than 40 search warrants at various sites across the nation in connection with a nationwide investigation conducted by the Federal Bureau of Investigation and the Naval Investigation Service of alleged fraud and bribery in the Department of Defense and in the defense industry. The nature and scope of the investigation and the dramatic manner in which the search warrants were executed attracted intense public interest and considerable news media attention. Two of these search warrants were issued by the District Court for the Eastern District of Missouri for the offices of two employees of the McDonnell Douglas Corp. (MDC), Thomas Gunn and Linda Ogle, Gunn's secretary. MDC is one of the nation's largest defense contractors and its

---

1. The Honorable Clyde S. Cahill, Jr., United States District Judge for the Eastern District of Missouri.

corporate offices are located in metropolitan St. Louis. The search warrant for the secretarial office, the description of the property to be seized, and the receipt for property seized were filed in the district court clerk's office and are open to the public. However, pursuant to *ex parte* motions filed by the government and granted by the district court, the search warrant for Gunn's office, the attached affidavits, and all other materials were sealed.

On July 1, 1988, appellants informally sought access to the sealed documents. There was no response to this request, and on July 6, 1988, appellants filed a motion to unseal the affidavits and other materials, pursuant to Fed.R.Crim.P. 41. The government, MDC and Gunn opposed unsealing the affidavits and other documents. MDC's response in opposition to appellants' motion to unseal was itself sealed upon MDC's motion. On July 15, 1988, the district court denied the motion to unseal and continued the seal for an additional thirty days. However, because the government did not oppose the unsealing of certain portions of the affidavits, the district court unsealed the description of the affiant, the description of the premises, and subsections A and B only of Section II of the affidavits.

The district court stated that, in general, the public and the press have a right to immediate access to documents filed in court that is based upon both the common law and the first amendment. Slip op. at 2. The district court further noted, however, that the right of public access to court records was not absolute and that public access could be restricted if the restriction was necessary to protect a compelling government interest and was narrowly tailored to serve that interest. *Id.* at 3. The district court decided that unsealing the affidavits and other materials would prejudice the government's on-going investigation by identifying as-yet-unnamed targets, by revealing the scope, status and direction of the investigation, by affording individuals the opportunity to tailor their testimony and destroy documents and other evidence, and by prematurely disclosing the existence of wiretaps and other investigatory tools. *Id.* at 3–4. The district court reviewed the sealed documents and determined that redaction on a line-by-line basis was impracticable because of the complex and interrelated nature of the allegations and the large number of individuals and activities involved. *Id.* at 4.

Appellants promptly filed a notice of appeal and a petition for immediate appellate review, expedited consideration and emergency relief. We granted the request for expedited appeal, requested expedited briefing, and heard oral arguments on July 29, 1988. MDC and Gunn filed briefs and presented oral arguments as amici curiae.

## APPEALABILITY

■ We first consider whether the district court order is appealable. Appellants argue that this court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court order is a final order or, alternatively, a final collateral order. Amicus MDC argues that the district court order is not appealable because it is not final. The district court order denied the motion to unseal, "pending further development of the investigation, but not later than 30 days from the date of this order, unless further extended by the Court." Slip op. at 6. Thus, MDC argues that because the district court will reconsider the motion to unseal in 30 days, the district court cannot be said to have conclusively resolved the issue and this appeal is premature. The district court order is arguably ambiguous. However, we believe the July 15 order is final for purposes of appeal. The district court order denied appellants' motion to unseal and thus conclusively rejected appellants' asserted right to immediate access to these documents. Deferral of appellate review pending district court reconsideration after 30 days, or until after additional extensions of time have expired, would effectively deny appellants much of the relief they seek, that is, immediate access. *See In re New York Times Co.*, 828 F.2d 110, 113 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *see also* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 3912–3913 (1976).

Although we have decided that the district court order is final for purposes of appeal, our decision is not based upon the collateral order exception. We do not believe the collateral order exception is applicable because there is no "underlying" proceeding in this case. The district court order is not a component of another proceeding. Usually motions for public access to court proceedings or records are filed by the press in connection with pending criminal or civil proceedings. *See, e.g., In re New York Times Co.*, 828 F.2d at 111 (press motions for access to certain papers filed in connection with pretrial suppression motions in criminal case); *In re Washington Post Co.*, 807 F.2d 383, 385 (4th Cir. 1986) (press motion for access to plea and sentencing hearings); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 659 (8th Cir.1983) (contempt proceeding); *cf. In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1304 (7th Cir.1984) (press motion for access to report filed in shareholder derivative action). Here, there is no separate pending case, civil or criminal. Appellants filed the motion to unseal pursuant to Fed.R.Crim.P. 41, and the district court treated the motion as a new miscellaneous matter. *See In re New York Times Co.*, 828 F.2d at 113, *citing In re National Broadcasting Co.*, 635 F.2d 945, 949 n. 2 (2d Cir.1980); *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 779 (9th Cir.1982) (motion for access to certain ministerial grand jury records filed by subjects of grand jury investigation); *In re Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256, 1257 (9th Cir.1979) (per curiam) (motion to unseal master affidavit filed by subjects of search warrant).

In sum, we hold that the district court order is a final appealable order under 28 U.S.C. § 1291. *See In re New York Times Co.*, 828 F.2d at 113; *United States v. Smith*, 787 F.2d 111, 113 (3d Cir.1986); *In re Continental Illinois Securities Litigation*, 732 F.2d at 1307–08; *United States v. Chagra*, 701 F.2d 354, 358–60 (5th Cir. 1983); *United States v. Criden*, 675 F.2d 550, 552 (3d Cir.1982); *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d at 783–84. *But see Seattle Times Co.*

*v. United States District Court*, 845 F.2d 1513, 1515 (9th Cir.1988) (appellate review by petition for writ of mandamus); *In re Washington Post Co.*, 807 F.2d at 388 (same); *In re Knight Publishing Co.*, 743 F.2d 231, 232 (4th Cir.1984) (same); *In re Iowa Freedom of Information Council*, 724 F.2d at 660 (same); *United States v. Brooklier*, 685 F.2d 1162, 1165 (9th Cir. 1982) (same); *In re United States ex rel. Pulitzer Publishing Co.*, 635 F.2d 676, 676 (8th Cir.1980) (same); *United States v. Powers*, 622 F.2d 317, 327–28 (8th Cir.) (McMillian, J., dissenting) (preference for mandamus), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980).

## FIRST AMENDMENT RIGHT OF PUBLIC ACCESS

We must first decide whether the first amendment right of public access extends to these documents. Appellants seek access to affidavits and other materials attached in support of two search warrants. The government, MDC and Gunn oppose appellants' motion for access. The government argues that the Supreme Court has never extended the first amendment right of public access to investigatory proceedings such as the issuance of search warrants and, even assuming the first amendment right of public access does extend to the issuance of search warrants, it does not extend to documents like search warrant affidavits.

The first amendment clearly protects the right of the public and the press to attend criminal trials. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 558–81, 100 S.Ct. 2814, 2818–30, 65 L.Ed.2d 973 (1980) (plurality). The Supreme Court has also recognized that the public and the press also have a first amendment right of access to certain pretrial proceedings in criminal cases. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7–9, 106 S.Ct. 2735, 2739–41, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*). In determining whether the first amendment right of public access extends to a particular type of proceeding, the Supreme Court

considers "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8, 106 S.Ct. at 2740.

As noted by the government, historically the process of issuing search warrants involves an *ex parte* application by the government and *in camera* consideration by the judge or magistrate. Moreover, the very objective of the search warrant process, the seizure of evidence of crime, would be frustrated if conducted openly. *Cf. id.* at 9, 106 S.Ct. at 2741, *citing Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979) (proper functioning of grand jury system depends upon secrecy). However, appellants do not seek access to the process of issuing search warrants; they seek access to the affidavits and other materials submitted in support of the search warrant applications.

The Supreme Court has not addressed the question whether the first amendment right of public access extends to *documents.* We are persuaded that the first amendment right of public access does extend to the documents filed in support of search warrant applications. First, although the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal. Under the common law judicial records and documents have been historically considered to be open to inspection by the public. *Cf. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–99, 98 S.Ct. 1306, 1311–13, 55 L.Ed.2d 570 (1978) (common law right to inspect and copy judicial records and documents, subject to supervisory control of courts); *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570 (11th Cir. 1985) (per curiam) (records in civil proceedings); *United States v. Martin,* 746 F.2d 964, 968 (3d Cir.1984) (all judicial records and documents); *In re Knight Publishing Co.,* 743 F.2d at 235 (sealing court documents in criminal trial); *In re Special Grand Jury (for Anchorage, Alaska),* 674

F.2d at 780–81 (grand jury ministerial records). *But cf. United States v. Webbe,* 791 F.2d 103, 107 (8th Cir.1986) (no "strong" presumption in favor of common law right of access). Second, public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct.

Moreover, even though a search warrant is not part of the criminal trial itself, like voir dire, a search warrant is certainly an integral part of a criminal prosecution. Search warrants are at the center of pretrial suppression hearings, and suppression issues often determine the outcome of criminal prosecutions. Pre-trial suppress on hearings, and other kinds of non-trial proceedings in criminal and civil cases, have been held to be subject to the first amendment right of public access by other federal courts of appeals. *See In re New York Times Co.,* 828 F.2d at 113–14 (Second Circuit); *In re Application of Herald Co.,* 734 F.2d 93, 98–99 (2d Cir.1984); *United States v. Brooklier,* 685 F.2d at 1169–71 (Ninth Circuit); *United States v. Criden,* 675 F.2d at 557 (Third Circuit); *cf. Seattle Times Co. v. United States District Court,* 845 F.2d at 1516–17 (Ninth Circuit) (pretrial detention hearing); *In re Washington Post Co.,* 807 F.2d at 389 (Fourth Circuit) (plea and sentencing hearings); *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1070–71 (3d Cir.1984) (civil proceedings); *In re Iowa Freedom of Information Council,* 724 F.2d at 661 (Eighth Circuit) (contempt proceeding); *United States v. Chagra,* 701 F.2d at 362–64 (Fifth Circuit) (bail hearing). These courts have also extended the first amendment right of public access to the documents filed in connection with these protected proceedings. *See Seattle Times Co. v. United States District Court,* 845 F.2d at 1517 (documents filed in connection with pre-trial detention proceeding); *United States v. Haller,* 837 F.2d 84, 86–87 (2d Cir.1988) (plea agreement); *In re New York Times Co.,* 828 F.2d at 114 (documents filed in connection with suppression

motions); *United States v. Smith,* 776 F.2d at 1111–12 (bill of particulars); *Associated Press v. United States District Court,* 705 F.2d 1143, 1145 (9th Cir.1983) (pretrial documents in general); *cf. In re Washington Post Co.,* 807 F.2d at 390 (affidavits submitted in connection with sentencing hearing).

## COMPELLING GOVERNMENT INTEREST AND LESS RESTRICTIVE ALTERNATIVES

■■■ "[R]ecognition of a qualified First Amendment right of access to the ... papers filed here does not mean that the papers must automatically be disclosed." *In re New York Times Co.,* 828 F.2d at 116. The first amendment right of public access is not absolute; it is a qualified right. *Press–Enterprise II,* 478 U.S. at 9, 106 S.Ct. at 2735; *Globe Newspaper Co. v. Superior Court,* 457 U.S. at 606, 102 S.Ct. at 2619–2620. "Proceedings may be closed and, by analogy, documents may be sealed if 'specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to that interest." ' " *In re New York Times Co.,* 828 F.2d at 116, *citing Press–Enterprise II,* 478 U.S. at 13–14, 106 S.Ct. at 2743 (citation omitted); *see In re Washington Post Co.,* 807 F.2d at 390. The party seeking closure or sealing must show that such a restriction of the first amendment right of public access is necessitated by a compelling government interest. *See Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) *(Press–Enterprise I),* citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. at 607, 102 S.Ct. at 2620. If the district court decides to close a proceeding or seal certain documents, it must explain why closure or sealing was necessary and why less restrictive alternatives were not appropriate. *Press–Enterprise I,* 464 U.S. at 510–11, 104 S.Ct. at 824–25. The district court's findings must be specific enough to enable the appellate court to determine whether its decision was proper; if the district court decides that a restriction of the first amendment right of public access is warranted, the district court can even file its statement of reasons and spe-

cific findings under seal. *See In re Washington Post Co.,* 807 F.2d at 391; *In re Application of Herald Co.,* 734 F.2d at 101.

■■■ We have carefully reviewed the affidavits and other materials attached to the search warrants. These documents were filed and maintained under seal in both the district court and in this court. Because counsel for appellants have not been permitted to review the sealed documents, their arguments were necessarily somewhat abstract and procedural. The government's arguments were similarly abstract for fear of disclosing the contents of the sealed documents. Nonetheless, despite the rather theoretical context, the arguments of the parties helped the court to focus on the issue and the applicable analysis. We have reviewed the district court's order and hold that the district court properly concluded that these documents should be kept under seal. The government has demonstrated that restricting public access to these documents is necessitated by a compelling government interest—the ongoing investigation. These documents describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved. Many of the specific allegations in the documents are supported by verbatim excerpts of telephone conversations obtained through court-authorized electronic surveillance or information obtained from confidential informants or both. There is a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released.

■■■ We also agree with the district court's determination that line-by-line redaction of the sealed documents was not practicable. These documents are to a considerable degree duplicative of one another. Virtually every page contains multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's on-going investigation.

We are aware that the affidavits attached to search warrants for the residence and business of a defense consultant and for the office of an employee of Varian Continental were unsealed on June 30, 1988. Like the affidavits in the present case, these affidavits had been filed under seal. However, due to government inadvertence, the seal expired without government opposition, and the affidavits were released to the public and the press. We have examined the released affidavits; the released affidavits involve different individuals and projects and thus are materially different from the affidavits and other materials at issue in the present case. Thus, we need not decide what effect, if any, the release of those affidavits would have had on our analysis.

We also do not reach the privacy, national security, trade secret, and confidential business information arguments advanced by the amici.

## DOCKET ENTRIES

 As a final matter, we note that the district court docket sheets have been sealed, no doubt out of an abundance of caution. We think this was improper and so direct the district court to unseal the docket sheets. "The case dockets maintained by the clerk of the district court are public records." *United States v. Criden*, 675 F.2d at 559. The docketing of motions to close a proceeding or seal certain documents provides notice to the public, as well as to the press, that such a motion has been made and, assuming that such motions are docketed sufficiently in advance of a hearing on or the disposition of the motion, affords the public and the press an opportunity to present objections to the motion. The fact that a closure or sealing order has been entered must itself be noted on the court's docket, absent extraordinary circumstances. The district court may permit the text of motions to close or seal, and any attachments, to be filed under seal pending disposition and may, if appropriate, even file its own decision under seal. *See United States v. Haller*, 837 F.2d at 87; *In re Washington Post Co.*, 807 F.2d at 391; *In re Knight Publishing Co.*, 743

F.2d at 235 n. 1; *In re Iowa Freedom of Information Council*, 724 F.2d at 662–63; *United States v. Criden*, 675 F.2d at 559–60.

Before unsealing the docket sheet, the district court may review the docket entries and redact any revealing references.

In conclusion, we hold that the qualified first amendment right of public access extends to the documents filed in support of search warrants and that the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable.

Accordingly, the order of the district court is affirmed.

BOWMAN, Circuit Judge, concurring.

I concur with Judge McMillian in affirming the order of the District Court. I believe, however, that we need not decide whether the first amendment right of public access extends to affidavits and other documents filed in support of search warrants. Assuming *arguendo* that it does, it is at best a qualified right, *see ante* at 574, and here the justification for sealing these documents for a limited time is abundantly clear. The investigation is still in progress. It is large and complex. The government has not yet obtained any indictments. Based or these circumstances and our examination of the sealed material, I am convinced that the sealing order serves important public interests, including the public interest in knowing the facts produced by an uncompromised investigation, the public interest in the successful prosecution of anyone who has defrauded the Department of Defense or bribed any of its officials, and the public interest in fairness to any innocent persons (and there may well be some) who are shown by the documents as being linked to the investigation.

Because the case for keeping these documents under seal for the time being is overwhelming, it necessarily overrides any qualified right of public access of which I can conceive. I therefore would not rush to judgment on the difficult question of

whether a qualified first amendment right of public access exists with respect to documents, such as these, that are placed in court files in the course of a criminal investigation. The common law right of access to judicial records—a qualified right with the decision as to access left to the sound discretion of the trial court—is well established, *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978); *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir.1986), would yield in this case precisely the same result that we have reached by other means, and represents a workable and reasonable approach to the problem of balancing the public interest in immediate access against the competing public interest in fair and effective criminal investigations. This is all the more reason for leaving the first amendment question to another day and to a case that actually requires its resolution, which this case does not.

HEANEY, Circuit Judge, concurring and dissenting.

I agree with the majority that the district court's order is appealable, that the first amendment right of public access extends to the documents in question and that the district court docket entries should be unsealed. I do not agree, however, that release of the affidavits underlying the search warrants and other materials under seal would impede the ongoing investigation of alleged fraud and bribery in the Department of Defense and in the defense industry.

If the government would have the Court deny the first amendment and common law rights of access to judicial records in order to inhibit the disclosure of sensitive information, it is incumbent upon it to show that denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest. *See Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (*Pressman–Enterprise I*) (quoting with favor, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2619–20, 73 L.Ed.2d 248 (1982)). That showing has not been made here. To the contrary, I believe that the affidavits may be released without jeopardizing the ongoing investigation. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Numerous search warrants and subpoenas have been served and the Director of the FBI has publicly stated that the investigation is nearing an end. Thus, it is probable that most of the targets have already been alerted to the fact that they are under investigation.

The newspapers of the nation have devoted extensive press coverage to the investigation and, particularly, to the roles of Melvyn R. Paisley, William M. Galvin and James E. Gaines within the defense contract and procurement business. The government has extensively briefed congressional committees on both the scope and the specific details of the investigation. As the majority recognizes, affidavits of James B. Lamb, special agent for the FBI, and Joanne T. Burns, which are entitled "Description of Mark C. Saunders and Premises to be Searched" and "Description of Joe Bradley and Premises to be Searched," have been released to the public. Indeed, a strong argument can be made that all of those involved with the investigation, as targets or otherwise, know its details, and only the general public remains in the dark.

Thus, given the already substantial non-public dissemination of the information contained in the sealed material, the government's interest served by maintaining the seal is minimal. In contrast with this minimal governmental interest, I note that the defense contract and procurement scandal in this country represents a public concern of great immediacy and magnitude. Knowledgeable United States Senators have reported that the amount of public funds involved reaches the hundreds of millions of dollars. Certainly the interest of the nation's taxpayers is such that they are entitled to know the full details of the procurement fraud as soon as possible in order to intelligently act on the matter. Thus, the benefit to be gained by continuing secrecy is negligible as compared to the

public benefit that would be gained by disclosure. Accordingly, I believe the district court accorded too little weight to the strong first amendment and common law presumption of access and to the educational and informational benefit which the public would derive from additional exposure to the subject materials. *See generally United States v. Criden,* 648 F.2d 814, 831 (3d Cir.1981).

Assuming for the sake of argument that a case can be made for withholding parts of the affidavits and assuming further that redaction of specific words and phrases is not practical, there still remains the requirement that the restriction on the information be narrowly tailored to serve the government's interest. Yet, having reviewed the sealed documents, I see no reason the government's interest would not be fully protected if the following numbered paragraphs from the "long" affidavit were released: 9–13,* inclusive; 14–30, inclusive; 54; 65; 132–141, inclusive; 144–148, inclusive; 154; and 157. Likewise, no argument can be made for retaining under seal the following additional paragraphs from the affidavit supporting the warrant issued In the Matter of the Search of Thomas Gunn: 9–13,* inclusive; 14–20, inclusive; and 65–69, inclusive. Finally, no purpose is served by retaining under seal the McDonnell Douglas Corporation Response re Motion to Unseal.[1]

### APPENDIX I

(1) Melvin Paisley office, D.D.C.

(2) Melvin Paisley home, E.D.Va.

(3) Pratt and Whitney offices, D.D.C.

(4) Cubic offices, S.D.Ca.

(5) William Galvin home, D.D.C.

(6) William Galvin office, D.D.C.

(7) Victor Cohen home, D.Md.

(8) Richard Seelmeyer, D.Md.

(9) Loral offices, S.D.N.Y.

(10) Ken Brooke, E.D.Va.

(11) Victor Cohen office, E.D.Va.

(12) Unisys offices, D.Minn.

(13) Norden offices, D.Conn.

(14) Whittaker offices, W.D.Ark.

(15) Varian offices, N.D.Tex.

(16) Armtec offices, S.D.Fla.

(17) George Stone, E.D.Va.

(18) Mark Saunders, E.D.Va.

(19) Jim Gaines office, E.D.Va.

(20) John Roberts, E.D.Va.

(21) Scott Lamberth, W.D.Ark.

(22) Bill Parkin home, E.D.Va.

(23) Bill Sanda home, D.Md.

(24) Era offices, E.D.Va.

(25) Hazeltine offices, E.D.N.Y.

(26) Fred Lackner home/office, C.D.Ca.

(27) Litton offices, C.D.Ca.

(28) Teledyne offices, C.D.Ca.

(29) Northrop offices, C.D.Ca.

(30) Thomas Muldoon home/office, D.D.C.

(31) Sherman office, E.D.Va.

(32) Stuart Berlin office, E.D.Va.

(33) Bryant Ticket Services office, D.N.J.

(34) Kane Paper Company offices, E.D.N.Y.

(35) Unisys offices, E.D.N.Y.

(36) Charles Gardner, E.D.N.Y.

(37) James G. Neal, E.D.Va.

(38) Hazeltine offices, E.D.Va.

(39) William Parkin home/office, E.D.Va.

(40) James Rapinac home, D.Conn.

---

* Indicates information released in the Dallas affidavits.

1. Proceeding on the assumption that there are findings adequate to support some restriction on access to the documents, alternatives to complete closure should be considered, and control should be asserted so as not to unwarrantedly abridge the acknowledged right of public access. *Press-Enterprise I,* 464 U.S. at 510–11, 104 S.Ct. at 824–825.

Pursuant to this court's request, the government supplied a list of warrants related to the subject ongoing investigation. These warrants were executed in June and appear in Appendix I. Presumably, an updated list is available. I note that a *New York Times* article of July 7, 1988, lists most of these with a brief description of the companies, company officials, Pentagon officials, and consultants subjected to federal searches or served with subpoenas.

(41) Professional Payroll offices, E.D.Va.

(42) William Zuba home/office, M.D.Pa.

(43) Loral office, N.D.Ohio

(44) Safe Deposit Box 452, Riggs National Bank, D.D.C.