895 F.2d 74
 17 Media L. Rep. 1385
 In re Application of NEWSDAY, INC.
In re Application for LIMITED UNSEALING OF AFFIDAVIT
SUPPORTING SEARCH WARRANT DATED JUNE 13, 1988.
Charles F. GARDNER, Appellant,
v.
NEWSDAY, INC., Appellee.
 Nos. 395, 396, Dockets 89-6169, 89-6177.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 26, 1989.
Decided Jan. 29, 1990.
 
 Michael J. Dell, New York City (Gary P. Naftalis and Suzanne L. Telsey, Kramer, Levin, Nessen, Kamin & Frankel, of counsel), for appellant Charles F. Gardner.
 Robert Lloyd Raskopf, New York City (Harry T. Walters and Paul S. Grobman, Townley & Updike and Nancy Richman, Times Mirror Co., of counsel), for appellee Newsday.
 Maury S. Epner, Washington, D.C. (Henry E. Hudson and Joseph J. Aronica, Dept. of Justice, of counsel), for amicus curiae the U.S.
 Before OAKES, PIERCE, and RUBIN,* Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Newsday, a newspaper, sought access to a search-warrant application containing information obtained by a wiretap. The application had been sealed by the district court at the request of the government. Following a guilty plea by the subject of the wiretap, the government withdrew its earlier objection to unsealing the application, and the district court released a redacted copy of the warrant materials. The subject of the wiretap appeals from this decision contending that the provisions of the federal wiretap statute forbid public disclosure in such a manner of information obtained by a wiretap. Without deciding whether, as contended by Newsday, the press has a constitutional right of access to documents contained in search warrant applications, we hold that the district court properly balanced the common law right of access to judicial records with the defendant's privacy rights, and affirm its release of a redacted copy of the warrant application.
 
 I.
 
 2
 Yesterday's front page news leads to today's lawsuits. The Federal Bureau of Investigation launched an investigation of possible kickbacks to Defense Department employees and other unlawful procedures in military procurement. The FBI obtained court authorization to tap the phone of Charles Gardner, a former employee of the Unisys Corporation, who was a key figure in the investigation. An FBI agent then used information obtained by the wiretap in an affidavit supporting an application for a search warrant of Gardner's home. The warrant was signed by a judge of the Eastern District of New York and executed the next day. A month later, in response to a motion by Newsday to unseal the entire affidavit, the judge heavily redacted the affidavit and unsealed a small part of it, disclosing only a few paragraphs describing Gardner's house.
 
 
 3
 The government later withdrew its objection to unsealing specified portions of the affidavit, so the district court ordered the release of those portions of the affidavit to Gardner and Dennis Mitchell, a business associate of Gardner and another subject of the investigation. Neither Gardner nor Mitchell was ever charged with any crime in the Eastern District of New York, but, later, after both had pled guilty to criminal informations filed in the Eastern District of Virginia, the government dropped its objection to release of the affidavit in its entirety. Gardner, however, continued to object to public disclosure. Thereafter, the district court rendered an oral opinion, granting Newsday's application to unseal both the search warrant and the search-warrant affidavit subject to redaction of extraneous material and references to third parties not subject to criminal investigation. On Gardner's motion, it stayed this order pending expedited appeal to this court.
 
 
 4
 Relying on Press-Enterprise Co. v. Superior Court,[1] the district court found that there was a qualified constitutional right of access to the warrant application, stemming from (1) a tradition of accessibility to such materials by the press and public, and (2) the significant role in the functioning of the search and seizure processes that such access would play.[2] Noting that a statute should not be construed so as to conflict with a constitutional right, the court held that Title III of the Omnibus Crime Control and Safe Streets Act of 1968[3] did not bar release of the intercepted communications. The court further held that it was required to balance the qualified right of access against Gardner's and Mitchell's privacy rights. Because of the legitimate public interest in the case and the fact that the defendants' privacy interests had been diminished by their guilty pleas and by the mundane business nature of the recorded conversations, the court ordered the application to be unsealed, redacting only those portions of the affidavit that gave the names of individuals or corporations that had not been indicted or otherwise disclosed.
 
 
 5
 Gardner argues that Title III forbids the disclosure of wiretap information used in a search warrant application, and that no qualified right of access exists. Since Title III is comprehensive, and was enacted to address constitutional concerns over the intrusiveness of wiretapping,[4] Gardner argues further that any qualified right of access that may exist is overridden in this case by his privacy rights. The government now takes the position that Title III does not forbid disclosure and that the district court's order should be affirmed. Newsday also does not appeal the district court's order.
 
 II.
 
 6
 Title III of the Omnibus Crime Control and Safe Streets Act of 1968 creates a comprehensive scheme limiting the use of various forms of electronic surveillance, providing under what circumstances electronic surveillance may be employed, and controlling the later use of information obtained by such means. "[P]rotection of privacy was an overriding congressional concern" in framing the statute,[5] and Congress sought to strike an acceptable balance between the privacy rights of individuals and the legitimate needs of law enforcement.[6] The statute does not, however, address the issue of public access to intercepted communications when those communications become part of a public document after having been used by the government in the course of its law enforcement activities.
 
 
 7
 Section 2511 of Title III makes it a crime intentionally to disclose communications in violation of Title III.[7] Section 2515 creates a separate barrier by forbidding the use of intercepted communications in any judicial proceeding except as authorized by the statute.[8] Section 2517 describes three situations in which intercepted communications may lawfully be used. Subsection 1 permits "any investigative or law enforcement officer" who has lawfully obtained knowledge of the contents of any intercepted communication to "disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate" in the performance of their official duties.[9] Subsection 2 authorizes investigative or law enforcement personnel who have lawfully obtained knowledge of any intercepted communications "to use such contents to the extent such use is appropriate to the proper performance of [their] official duties."[10] Subsection 3 permits "any person " who has received "any information concerning" intercepted communications to "disclose the contents of that communication or such derivative evidence while giving testimony ... in any proceeding held under the authority of the United States or of any State or any political subdivision thereof."[11]
 
 
 8
 Aside from these permitted uses, Title III requires sealing of intercepted communications and grants certain procedural rights to any party whose communications were intercepted. Section 2518(8)(a) provides in part that recordings of intercepted communications "shall be made available to the judge issuing [the Title III order] and sealed under his directions."[12] It also permits duplicate recordings of the intercepted communications to be made for use or disclosure pursuant to the provisions of Sec. 2517.[13] Section 2518(9) provides that, at least ten days before evidence relating to any intercepted communication is received in evidence "or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court," each party shall be provided with a copy of the order under which the interception was carried out, unless the judge finds that such advance notice was not possible and that prejudice will not result.[14] Finally, Sec. 2518(10) provides in part that any person who was a party to an intercepted communication may move to suppress the contents of such communication on the grounds that it was intercepted unlawfully, or pursuant to an order insufficient on its face, or not in conformity with a lawful order.[15]
 
 
 9
 Gardner argues that "disclosure" by testimony in court pursuant to Sec. 2517(3) is the exclusive means by which intercepted communications may be released to the public, relying in part on the difference in meaning between the words "use" and "disclose" employed in Sec. 2517(2) and (3), and the procedural safeguards provided in Sec. 2518 for disclosure pursuant to Sec. 2517(3).
 
 
 10
 Gardner cites a Seventh Circuit case, United States v. Dorfman,[16] which held that Sec. 2517(3) was the exclusive means of public access to exhibits containing wiretap materials submitted by the government in opposition to a motion to suppress the fruits of wiretapping at defendants' trial.[17] Beginning with the premise, "Title III implies that what is not permitted is forbidden,"[18] the Dorfman court concluded:
 
 
 11
 The draftsmen [of Title III] must have known that most criminal proceedings are conducted in public, so probably they expected (if they thought about the matter) that most testimony authorized by section 2517(3) would end up in the public domain. But we find no evidence that they wanted to create a right of public access.[19]
 
 
 12
 We agree that Title III generates no right of access, but it is a non-sequitur to conclude the obverse: that Congress intended in Sec. 2517, which relates solely to use in law-enforcement activities and judicial proceedings, to forbid public access by any other means on any other occasion. While the Dorfman opinion did state, "the only lawful way [intercepted materials] can be made public over the defendants' objection is by being admitted into evidence in a criminal trial or other proceeding,"[20] the court noted "[t]he usual disposition of evidence submitted to a court in a preliminary hearing but no longer required by the court is to return it to the party who submitted it."[21] Unlike the exhibits proferred in Dorfman, search warrants and the affidavits that precede their issuance are public documents required by Rule 41 of the Federal Rules of Criminal Procedure to be filed with the clerk of the issuing court.[22] Dorfman, therefore, deals with materials that were not required to be, and were not, filed in the court's records.
 
 
 13
 The difference between the words "use" and "disclose" in subsections 2 and 3 is not itself sufficient to support the inference that secrecy is commanded except when the materials are used pursuant to the specific provisions of subsection 3. "Use" under subsection 2 is not limited to a derivative reference, but permits quotation of the contents of intercepted communications. The choice of the word "disclose" in subsection 3 reflects its purpose of permitting any person, not merely a law enforcement official, to testify to the content of the intercepted communication.
 
 
 14
 In short, nowhere does Title III state rules regarding disclosure of intercepted communications to the public incident to, or after, their use under Sec. 2517. Indeed, the major cases on public access to judicial proceedings and records, discussed infra, postdate the enactment of Title III. No doubt the framers of Title III expected that the main channel of public disclosure of intercepted communications would be testimonial, but they did not so confine it.
 
 III.
 
 15
 That Title III does not forbid public access to the warrant application does not of itself mean that there is a right of access to such materials. To determine whether there is such a right, we first look to the common law, for we need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis.
 
 
 16
 In Nixon v. Warner Communications, Inc.,[23] the Supreme Court stated that, under the common law:
 
 
 17
 [T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.... American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government.[24]
 
 
 18
 This jurisprudentially established right of access had, the Court observed, been "an infrequent subject of litigation," whose "contours have not been delineated with any precision."[25] Recent cases have begun to define more clearly the scope of the right with respect to search warrant materials.
 
 
 19
 In Times Mirror Co. v. United States,[26] the Ninth Circuit held that there was no constitutional or common law right to inspect a warrant application during the pendency of the investigation.[27] On the other hand, in In re Search Warrant for Secretarial Area Outside the Office of Thomas Gunn,[28] the Eighth Circuit held that there was a qualified constitutional right of access to search warrant applications once the warrant had been executed, even if the investigation had not been completed.[29] Taking a middle position, the Fourth Circuit, in In re Baltimore Sun Co.,[30] agreed with the Ninth Circuit that there was no constitutional right of access, but held that a common law right of inspection attached once the warrant had been filed.[31]
 
 
 20
 Times-Mirror focused on the question of rights of access "during the pre-indictment stage of an ongoing criminal investigation."[32] In this case, Gardner resists disclosure at a later point, after he has pled guilty to a criminal information. Without deciding whether we would concur in Times-Mirror 's result, we decline to extend its holding. Here, the warrant has been executed, a plea-bargain agreement has been reached, the government admits that its need for secrecy is over, and the time has arrived for filing the application with the clerk.[33] In these circumstances, there is a common law right to inspect what is commanded thus to be filed.
 
 
 21
 Noting that none of the cases discussed above addressed the issue of access to affidavits containing communications intercepted under Title III, Gardner cites language from Times Mirror that "there is no right of access to documents which have traditionally been kept secret for important policy reasons."[34] He argues that the congressional protection of privacy interests by Title III represents a similar important policy that overrides the common law right of access. The Times Mirror court was referring to a class of documents, grand jury records, to which no general right of access has ever been recognized. In contrast, the fact that search warrants are commonly filed under seal until the warrant is executed does not change their status as public documents.
 
 
 22
 As the Baltimore Sun court noted, the government must move to seal the warrant, and the ultimate decision to grant the motion rests with the judicial officer to whom the motion is made. "If someone desires to inspect the papers, an opportunity must be afforded to voice objections to the denial of access."[35] The presence of material derived from intercepted communications in the warrant application does not change its status as a public document subject to a common law right of access, although the fact that the application contains such material may require careful review by a judge before the papers are unsealed.
 
 IV.
 
 23
 Gardner makes a final argument that, even if there is a right of access to search warrant applications that contain intercepted communications, the district court judge did not properly balance this right against Gardner's privacy rights in this case. We hold that the common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed; in this case, the district court judge gave due consideration to the privacy rights of Gardner and other parties to the intercepted communications, and did not abuse his discretion in ordering release of the redacted affidavit.
 
 
 24
 As the Supreme Court said in Nixon, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."[36] Relying on the New York Times line of cases,[37] the district court balanced the public's right of access with Gardner's and Mitchell's Title III privacy interests. Under the New York Times test, "the court should consider 'whose privacy interests might be infringed, how they would be infringed, what portions of the tapes might infringe them, and what portion of the evidence consisted of the tapes.' "[38] In addition:
 
 
 25
 [T]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of the Title III material should weigh heavily in a court's balancing equation.... The job of protecting such interests rests heavily with the trial judge, since all the parties who may be harmed by disclosure are typically not before the court.[39]
 
 
 26
 Under the New York Times standard, a district court has the authority to redact a document to the point of rendering it meaningless,[40] or not to release it at all,[41] but such drastic restrictions on the common law right of access are not always appropriate.[42] The record shows that the district court was aware of the privacy interests at stake, and redacted references to innocent third parties. Gardner was provided with a copy of the intercepted communications, and had ample time to formulate specific objections to disclosure.[43] Considering the facts of this case and the nature of the intercepted communications, we find that the district court did not abuse its discretion.
 
 
 27
 For these reasons, the order releasing the search warrant affidavit as redacted is AFFIRMED.
 
 
 
 *
 Senior Circuit Judge of the Fifth Circuit, sitting by designation
 
 
 [1]
 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986)
 
 
 [2]
 See id. at 8-9, 106 S.Ct. at 2740-41
 
 
 [3]
 Current version at 18 U.S.C. Secs. 2510-2521 (1988)
 
 
 [4]
 See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)
 
 
 [5]
 Gelbard v. United States, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972)
 
 
 [6]
 See National Broadcasting Co. v. United States Dep't of Justice, 735 F.2d 51, 53 (2d Cir.1984)
 
 
 [7]
 18 U.S.C. Sec. 2511(1) (1988)
 
 
 [8]
 Id. Sec. 2515
 
 
 [9]
 Id. Sec. 2517(1) (emphasis added)
 
 
 [10]
 Id. Sec. 2517(2) (emphasis added)
 
 
 [11]
 Id. Sec. 2517(3) (emphasis added)
 
 
 [12]
 Id. Sec. 2518(8)(a)
 
 
 [13]
 Id
 
 
 [14]
 Id. Sec. 2518(9)
 
 
 [15]
 Id. Sec. 2518(10)
 
 
 [16]
 690 F.2d 1230 (7th Cir.1982)
 
 
 [17]
 Accord In re Sealed Search Warrant for Cubic Corp., No. 88-2945M, 1989 WL 1607 (S.D.Cal. Feb. 22, 1989)
 
 
 [18]
 690 F.2d at 1232
 
 
 [19]
 Id. at 1233
 
 
 [20]
 Id
 
 
 [21]
 Id
 
 
 [22]
 See Fed.R.Crim.Proc. 41(g)
 
 
 [23]
 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)
 
 
 [24]
 Id. at 597-98, 98 S.Ct. at 1311-12 (citations omitted); see also In re Application of National Broadcasting Co., 635 F.2d 945, 949 (2d Cir.1980)
 
 
 [25]
 Id. 435 U.S. at 597, 98 S.Ct. at 1311
 
 
 [26]
 873 F.2d 1210 (9th Cir.1989)
 
 
 [27]
 Id. at 1218-19
 
 
 [28]
 855 F.2d 569 (8th Cir.1988)
 
 
 [29]
 Id. at 573
 
 
 [30]
 886 F.2d 60 (4th Cir.1989)
 
 
 [31]
 Id. at 64-65
 
 
 [32]
 873 F.2d at 1221
 
 
 [33]
 See Baltimore Sun, 886 F.2d at 65
 
 
 [34]
 Times Mirror, 873 F.2d at 1219
 
 
 [35]
 Baltimore Sun, 886 F.2d at 65
 
 
 [36]
 435 U.S. at 599, 98 S.Ct. at 1312 (citations omitted)
 
 
 [37]
 In re New York Times, 828 F.2d 110 (New York Times I ) (2nd Cir.), after remand 834 F.2d 1152 (New York Times II ) (1987), after remand 837 F.2d 599 (New York Times III ), cert. denied, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988)
 
 
 [38]
 New York Times I, 828 F.2d at 116 (quoting Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984)
 
 
 [39]
 Id
 
 
 [40]
 New York Times II, 834 F.2d at 1154
 
 
 [41]
 United States v. Gerena, 869 F.2d 82, 86 (2d Cir.1989)
 
 
 [42]
 See In re Search Warrants Issued on June 11, 1988, 710 F.Supp. 701, 705 (D.Minn.1989)
 
 
 [43]
 Cf. 18 U.S.C. Sec. 2518(9), (10) (1988)