UNITED STATES, Plaintiff,

v.

**ALL FUNDS ON DEPOSIT AT WELLS FARGO BANK IN SAN FRANCISCO, CALIFORNIA, IN ACCOUNT NO. 7986104185, HELD IN THE NAME OF ACCOUNT SERVICES INC., AND ALL PROPERTY TRACEABLE THERETO, Defendant In Rem.**

United States, Plaintiff,

v.

All Funds on Deposit at Union Bank in San Francisco, California, In Account No. 3530000248, Held in the Name of Account Services Corp., and All Property Traceable Thereto, and All Funds on Deposit at Union Bank in San Francisco, Ca., In Account No. 3530000256, Held in the Name of Account Services Corp., and All Property Traceable Thereto, and Defendants In Rem.

Nos. 09 Mag. 1320, 09 Mag. 1496.

United States District Court,
S.D. New York.

Aug. 11, 2009.

Arent Fox LLP, by Baruch Weiss, Esq., Matthew Trokenheim, Esq., New York, NY, for Movant.

Lev L. Dassin, United States Attorney for the Southern District of New York, by Jeffrey Alberts, Arlo Devlin Brown, Jonathan New, Assistant United States Attorneys, for Respondent.

## OPINION AND ORDER

LAURA TAYLOR SWAIN, District Judge.

Costigan Media ("Costigan") moves to intervene in the above captioned matters and to unseal documents relating to two seizure warrants associated with the Government's investigation of internet gambling, claiming rights of access grounded in the common law and the First Amendment. Costigan operates the website gambling911.com and publishes a newsletter, both of which report on issues affecting the gambling industry, including legislation, criminal prosecutions of industry participants, and efforts to legalize various forms of gambling. Costigan is a source of gambling-related information and commentary for numerous news outlets. (Costigan Mem. of Law at 3–4.)

On or about July 2, 2009, Costigan filed a motion to intervene and unseal the warrant affidavit in Case No. 09 Mag. 1320. On or about July 10, 2009, Costigan filed a similar motion with respect to Case No. 09 Mag. 1496. Because both motions seek the same relief and the parties' arguments are identical as to both motions, the Court treats them jointly, except as otherwise noted herein. The undersigned, sitting as Part I judge, heard oral argument on the motions on July 27, 2009, including *ex parte* argument from the Government regarding its factual assertions and specific redactions to the documents at issue that it contends are necessary even if Costigan is found to have a right of access those documents. The Court has considered carefully all of the parties' submissions and arguments [1] and, for the reasons stated below, grants Costigan's motion to intervene and unseals redacted versions of the warrant affidavits and of the submission that the Government has requested be filed under seal in connection with this motion practice.

## BACKGROUND

On June 2, 2009, a Magistrate Judge of this Court issued a warrant of seizure *in rem* authorizing the seizure of funds in the Wells Fargo Bank account pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955 in Case No. 09 Mag. 1320.[2] (Costigan Mem. of Law Ex. 1–2.) On June 24, 2009, a Magistrate Judge of this Court issued a warrant of seizure *in rem* autho-

---

1. Because an indictment has now been issued in a related matter, Indictment 09 Cr. 752(SHS), the Court has also directed the Government to make a further submission identifying any effect that the indictment may have on the law enforcement interests that the Government has asserted in opposition to Costigan's motions to unseal the warrant affidavits.

2. 18 U.S.C. § 981(a)(1)(A) and (C) authorize the government to seize for civil forfeiture property involved in, constituting, derived from, or traceable to specific crimes, including money laundering. 18 U.S.C. § 981(b) provides that the warrant for seizure must be obtained in the same manner as a search warrant in a criminal matter. 18 U.S.C. § 984 provides for the forfeiture of identical fungible property. 18 U.S.C. § 1955 makes it a federal crime to finance or operate an illegal gambling business and subsection (d) thereof provides for forfeiture of property used in connection with such a business.

rizing the seizure of funds in the two Union Bank accounts pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955 in Case No. 09 Mag. 1496. (*Id.* at 3–5.) Each finding that probable cause existed to issue the warrant was based on an application supported by an affidavit made by a Special Agent of the Federal Bureau of Investigation setting out the Government's evidence. (*Id.* at 1, 3; Declaration of Special Agent Dana Conte dated July 20, 2009 ("Conte Decl.") Exs. 1, 3.) These affidavits were ordered to remain under seal "until further Order of the Court." (Conte Decl. Ex. 1 at 13, Ex. 3 at 15.) The seizure warrants have been executed.[3] (Gov't Br. 3.) The Government represents, in its brief in opposition to the unsealing application and in a further *ex parte* submission that it requests be maintained under seal, that it has not yet publicly filed a criminal or civil forfeiture action and that it is actively investigating matters discussed in the affidavits that Costigan seeks to unseal. (*Id.* at 1.).

### DISCUSSION

#### Costigan's Motion to Intervene

■ "A motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir.2008). The Government does not oppose the motion to intervene, which is granted.

#### Costigan's Motion to Unseal the Warrant Affidavits

Costigan bases its motion to unseal the affidavits submitted in support of the Government's seizure warrant applications on the common law right of access to judicial documents and the First Amendment. The Government resists disclosure on the grounds that the press and public have no First Amendment right of access to the affidavits under the current circumstances and that any common law right of access that might apply is outweighed by compelling countervailing interests because unsealing the affidavits would jeopardize the confidentiality, and thus the integrity and potential success, of ongoing law enforcement investigative activity and efforts to seize additional funds.

While there is a dearth of case law relating to public access to seizure warrants issued in connection with civil forfeiture proceedings, there has been relatively frequent litigation over access, prior to the issuance of an indictment, to materials filed in support of search warrant applications. The Court finds the search warrant precedents pertinent, particularly because search warrant proceedings and applications involve the same types of *ex parte* judicial determinations of probable cause, and law enforcement considerations, that are involved here.

The Court initially addresses Costigan's First Amendment claim because, as explained below, although the common law presumption of access to the subject affidavits applies it is outweighed to a significant degree by the countervailing factors favoring denial of access. The Court "may not avoid the question of whether a First Amendment presumption of access also exists, for [Costigan] ask[s the Court] to impose the higher constitutional burden in requiring disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (citation omitted) (remanding to the district court to determine whether the rights of access were overcome by competing considerations).

---

**3.** The return for the June 2, 2009, warrant was filed on August 5, 2009, and the return for the June 24, 2009, warrant was filed on July 28, 2009.

*Applicability of the Qualified First Amendment Right of Access*

▮▮▮ "In cases dealing with the claim of a First Amendment right of access to criminal proceedings, [the Supreme Court's] decisions have emphasized two complementary considerations." *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). The first consideration is "whether the place and process have historically been open to the press and general public." *Id.* (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)). The second consideration is "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (citing *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. 2613). *See also id.* at 9, 106 S.Ct. 2735 (characterizing these as "considerations of experience and logic"). The Second Circuit has described these considerations as embodying one of two "approaches" employed by Circuit Courts of Appeals for determining the applicability of the First Amendment to attempts to access judicial documents. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir.2004). *See also Lugosch*, 435 F.3d at 120. "The second approach considers the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* at 120 (alteration in original) (quoting *Hartford Courant*, 380 F.3d at 93 (2d Cir.2004)).[4]

While the Second Circuit has not specifically addressed these standards in the context of search warrant supporting affidavits, the Circuit held the First Amendment right of access inapplicable to an affidavit underlying a Title III wiretap application in *In re the Application of the New York Times Co. to Unseal Wiretap & Search Warrant Materials*, slip op. Nos. 09–0854–cv (L), 09–1164(con), 2009 WL 2411768 (2d Cir. Aug. 7, 2009) ("*In re NYT Wiretap* ").[5] The Circuit has held the First Amendment right applicable to documents filed in connection with a summary judgment motion in a civil case and court dockets in general. *See Lugosch*, 435 F.3d 110; *Hartford Courant*, 380 F.3d 83.

Three other Circuits have addressed the issue of whether the First Amendment right of access applies to search warrant applications prior to the issuance of an indictment, two finding that it does not (*Times Mirror Co. v. U.S. Dist. Ct. for Central Dist. of Ca.*, 873 F.2d 1210 (9th Cir.1989); *In re Baltimore Sun Co.*, 886 F.2d 60 (4th Cir.1989)) and one finding that it does (*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir.1988).).

Search warrant applications clearly form the basis for judicial decision making and generally are unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery. In applying the "experience" prong of the experience and logic test to requests to unseal such warrants before they would otherwise have become public courts have differed as to whether the First Amend-

---

**4.** This "second approach," which has been relied on primarily in cases of applications for judicial documents in connection with specific ongoing judicial proceedings, appears to this Court to be a situation-specific application of the "experience and logic" test, in that it first inquires as to whether there is a traditional or historical predicate for public attendance at the relevant proceeding and, like the "logic" prong of the "experience and logic" test, then examines whether access to the related submissions or documentation is appropriate and necessary to effective public participation in the proceeding.

**5.** The *In re NYT Wiretap* Court did not address the search warrant affidavit aspect of the application.

ment access right is triggered by the likelihood of eventual disclosure or whether the applicability of the right turns on the historical precedents for access to the proceeding in connection with which the court acted on the basis of the affidavit. In *Times Mirror*, the Ninth Circuit found "no historical tradition of open search warrant proceedings and materials," and that "the experience of history implies a judgment that warrant proceedings and materials should not be accessible to the public, at least while a pre-indictment investigation is still ongoing in these cases." 873 F.2d at 1214. The Fourth Circuit, in *In re Baltimore Sun*, followed *Times Mirror* in determining that there is no First Amendment right of access to a search warrant affidavit. *In re Baltimore Sun*, 886 F.2d at 64–65. By contrast, the Eighth Circuit's determination that the right of public access extends to the documents filed in support of search warrant applications turned on that Court's recognition that "search warrant applications and receipts are routinely filed with the clerk of court without seal," the common law principle that judicial records and documents have historically been "considered open to inspection by the public," and the historical tradition with respect to public access to the suppression hearings that may follow an indictment and to which the underlying warrant applications may be integral. 855 F.2d at 573.

Because the experience and logic test has its origin in the Supreme Court's guidance relating to the applicability of the First Amendment right to access to proceedings, and the supporting affidavits here at issue were tendered in connection with specific warrant application proceedings, this Court concludes that it is appropriate to look, in determining the relevant historical context to examine in connection with the application for access to these sealed documents, to the type of proceeding in connection with which the documents became sealed judicial records. Indeed, the most appropriate framework for application of the "experience and logic" test in the context of sealed judicial documents would appear to begin with the historical treatment of access issues in connection with the type of proceeding for, or through, which the document was created, if the document has not been integral to any other judicial determination as of the time of the application to unseal.[6]

■ If that proceeding is one to which the press or public is seeking access in the controversy that is before the Court, the "experience and logic" inquiry will essentially be coextensive with that under the "second approach" to the First Amendment analysis, i.e., whether the "experience and logic" test requires access to that proceeding, and thus to the particular document as a "deriv[ation] from or a necessary corollary of the capacity to attend [that] proceeding[ ]." *Lugosch*, 435 F.3d at 120.

■ If, on the other hand, there is no pending or scheduled proceeding involving the sealed document, the court's first step

---

**6.** The Eighth Circuit approach—making the "experience" determination on the basis of accessibility traditions with respect to proceedings that have not yet arisen, and might not ever arise, with respect to the document in question—tends to conflate the First Amendment analysis with the common law right of access to judicial documents. It is noteworthy that, in *In re NYT Wiretap*, the Second Circuit looked to the statutorily-established presumption of confidentiality and privacy at the wiretap application stage rather than the fact that "[i]n the ordinary course, wiretap orders and applications are unsealed during criminal proceedings or discovery" in determining that the First Amendment right of access did not apply to the underlying application even where related criminal proceedings had been concluded through guilty pleas. *In re NYT Wiretap*, slip op. at 3, 12.

should be to look to the nature of and historical access tradition relevant to proceedings (A) that have occurred prior to the application to unseal the document, and (B) to which the document was integral, in order to determine whether any such proceedings were ones to which the public would historically have had a right of access. If no such proceeding has historical precedent for access, the "experience" prong of the test is not met and the First Amendment right of access is inapplicable (although the common law right of access may well be). If, however, experience indicates a history or tradition of public access the court must move on to the second step—the "logic" prong of the inquiry. This step requires the Court to examine whether " 'public access plays a significant positive role in the functioning of the particular process in question.' " *Hartford Courant,* 380 F.3d at 92 (quoting *Press–Enterprise,* 478 U.S. at 8, 106 S.Ct. 2735). The First Amendment right of access will apply to the document if both prongs point to public access.

▉ Application of this framework to the instant application indicates that Costigan has no First Amendment right of access to the seizure warrant affidavits at this juncture. Aside from this motion practice, only one type of judicial proceeding bearing any connection to the warrants at issue has occurred to date: the application proceedings in connection with which the warrants were issued. Warrant application proceedings are highly secret in nature and have historically been closed to the press and public, and neither party to this motion practice contends otherwise. Thus, the "experience" prong of the experience and logic test does not support the existence of Costigan's claimed First Amendment right. The "logic" prong is likewise unavailing for Costigan.[7] There is no First Amendment right of access to these warrant applications at this stage because the experience and logic test supports no such right on the current record, and the second test (access to documents as a corollary to effective public attendance at a particular proceeding) is inapplicable.

*Applicability of the Common Law Right of Access*

▉ The common law recognizes a right of public access to "judicial documents" or "judicial records," defined as those documents filed with a court and "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo,* 44 F.3d 141, 145–46 (2d Cir.1995) ("*Amodeo I* ") (further characterizing the right as a "presumption favoring access to judicial records"). Access to such documents promotes the legitimate interests of the public and the press in "keep[ing] a watchful eye on the workings of public agencies" and "publish[ing] information concerning the operation of government." *Id.* at 145 (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)).

▉ Affidavits in support of seizure or search warrants are central to a court's probable cause determination. These documents clearly fall within the definition of "judicial documents" and public access to them facilitates public monitoring of the various government agencies and branches. *See also In re Application of News-*

---

7. Public access does not play a significant positive role in the functioning of warrant application proceedings. To the contrary, it is often crucial that probable cause determinations in connection with search or seizure warrants be shielded from public scrutiny at the time they are made in order to preserve the integrity and effectiveness of the related criminal investigations.

*day, Inc.*, 895 F.2d 74 (2d Cir.1990) (presuming a common law right of access to affidavit in support of a search warrant application and discussing countervailing interests); *In re Application of the N.Y. Times Co.*, 600 F.Supp.2d 504, 507 (S.D.N.Y.2009) (holding that materials in support of wiretap applications "plainly" qualify as "judicial documents" because "courts must necessarily review them in order to perform" their task of deciding such applications), *rev'd on other grounds, In re NYT Wiretap*, slip op. Nos. 09–0854–cv (L), 09–1164(con), 2009 WL 2411768 (2d Cir. Aug. 7, 2009).

 Having found that the common law presumption of access attaches to the affidavits at issue, the Court must next determine the weight be to accorded to that presumption. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995) ("*Amodeo II*"). *See also id.* at 1048 (explaining the importance of "professional and public monitoring" of the judiciary to its "democratic control" and concluding that "[s]uch monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions"). In Amodeo II, the Second Circuit identified the continuum of judicial documents as ranging from "matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* at 1049. Especially great weight is given to documents that are material to particular judicial decisions and thus critical to "determining litigants' substantive rights—conduct at the heart of Article III—and ... public monitoring of that conduct." *Id.* At the other end of the continuum are documents, like those ex-

changed between parties in discovery, that do not affect the performance of Article III functions. *Id.* at 1050.

There can be no doubt that a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights, or that information upon which the court relies in making that determination directly affects the adjudication. The affidavits at issue here contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants. The common law presumption of access to the affidavits is therefore entitled to great weight. *See In re N.Y. Times Co.*, 600 F.Supp.2d at 507 (citing *Amodeo II*, 71 F.3d at 1049) (holding that the weight of the presumption of access to documents relating to wiretap applications is "at its strongest [because] the documents are directly relevant to the exercise of a court's Article III judicial powers").

*Balancing the Competing Interests*

 "Once the weight of the [common law] presumption [of access] is determined, a court must balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. *See also Lugosch*, 435 F.3d at 124 (2d Cir.2006) ("Notwithstanding the presumption of access under ... the common law ..., the documents may be kept under seal if 'countervailing factors' ... so demand."). The Court thus turns to the competing interests that the Government contends require denying access. Where the presumption of access is "of the highest" weight, as to material sought by the public or press, the material "should not remain under seal *absent the most compelling reasons.*" *Lugosch*, 435 F.3d at 123 (emphasis in original) (quoting *Joy v. North*, 692 F.2d 880 (2d Cir.1982)). This standard applies here. Thus, the seizure warrant affidavits cannot remain under seal unless the countervailing factors pro-

vide "the most compelling [of] reasons" to deny access. *Id.* In balancing the relevant countervailing factors, the Court "has a responsibility to exercise an informed discretion … with a sensitive appreciation of the circumstances" surrounding the affidavits. *Nixon,* 435 U.S. at 603, 98 S.Ct. 1306. To the extent that compelling reasons exist to deny public access to the subject affidavits, the limitation should not be broader than necessary. *See, e.g., In re Newsday,* 895 F.2d at 80 (warning against "drastic restrictions on the common law right of access" and approvingly noting district court's limited redactions); *In re San Francisco Chronicle,* No. M07–256 (TCP), 2007 WL 2782753, at *2, *4 (E.D.N.Y. Sept. 24, 2007) (limiting redactions to identifying information of witnesses where the role of that information in the exercise of judicial power and its value in monitoring courts were "minimal"); *In re Searches of Semtex Indus. Corp.,* 876 F.Supp. 426, 429 (E.D.N.Y.1995) (directing the eventual unsealing of warrant application with redactions of only "information regarding under cover agents or cooperators"). The Court is required to order disclosure absent compelling reasons to deny access and even then must employ the least restrictive possible means of doing so.

The Government argues that two countervailing considerations warrant denying Costigan, and the public, any access to the warrant affidavits at this time. First, the Government cites its ongoing criminal investigation, which it claims would be compromised by the revelation of the affidavits' content. Second, and relatedly, the Government points to its ongoing effort, related to the same investigation, to seize assets that constitute proceeds of criminal activity. Such interests are frequently found by courts to be sufficiently compelling to warrant some measure of closure. *See, e.g., United States v. Haller,* 837 F.2d 84, 87–88 (2d Cir.1988) (holding that closure was "essential to protect … an ongoing criminal investigation"); *In re Sealed Search Warrants Issued June 4 and 5, 2008,* No. M08–208 (DRH), 2008 WL 5667021, at *4–5 (N.D.N.Y. July 14, 2008); *In re San Francisco Chronicle,* 2007 WL 2782753, at *3–4 (E.D.N.Y. Sept. 24, 2007); *United States v. East Side Ophthalmology,* Nos. 95 Mag. 2424, 95 Mag. 2425, 95 Mag. 2431, 1996 WL 384891, at *3 (S.D.N.Y. July 9, 1996); *In re Semtex,* 876 F.Supp. at 429; *United States v. Cabal,* No. 92 Cr. 108(LLS), 1992 WL 110738, at *2 (S.D.N.Y. May 13, 1992) (citing *In re Gunn* ); *In re Gunn,* 855 F.2d at 574 (holding that the government's interest in protecting the integrity of its on-going investigation . outweighed common law and First Amendment right of access).

Although the Government's publicly filed memorandum of law asserts these considerations only conclusorily, it has also submitted, *ex parte* and under seal, a declaration by the Special Agent who signed the subject affidavits which explains the Government's position in some detail and attaches a number of exhibits, including the affidavits themselves. *See* Conte Decl. For the reasons set forth in a separate Sealed *Ex Parte* Memorandum Opinion, the Court finds that the sensitivity of the Government's ongoing investigation and the potential that premature disclosure may thwart further seizures are compelling reasons constituting countervailing factors sufficient to require the redaction of certain portions of the subject affidavits and the Conte Declaration, although certain portions of those documents will be unsealed at this time.[8] *See Aref,* 533 F.3d

---

**8.** The Court has also considered whether, if the First Amendment standard were applicable, further disclosure would be warranted at this time and concludes that none would be. The First Amendment generally imposes a "more stringent … framework" for permit-

at 82 ("[W]hile the findings [supporting denial of access] must be made on the record for our review, 'such findings may be entered under seal, if appropriate.'" (quoting *In re N.Y. Times Co.*, 828 F.2d at 116)). Therefore, although the complete versions of the documents will remain under seal pending further order of the Court, redacted versions of the warrant affidavits and the Conte Declaration will be placed in the Court's public file. The following portions of the documents will be redacted from the public versions: June 2, 2009, Aff. ¶¶ 5 (last sentence only) and 7–13; June 24, 2009, Aff. ¶¶ 6 (last sentence only), and 8–14;[9] Conte Decl. ¶¶ 9–13, and 15, Exs. 5–7.[10]

#### CONCLUSION

For the forgoing reasons, the June 2, 2009, and June 24, 2009, seizure warrant affidavits are hereby unsealed in redacted form, as reflected in the attached Exhibits A and B. The Government's application to file the original of the Conte Declaration and exhibits under seal is granted, but that declaration and its exhibits are hereby unsealed to the extent that the Government is directed promptly to file a redacted copy of the declaration and exhibits consistent with the instructions set forth in the preceding paragraph.

To the extent any of the redacted portions remain under seal following the Court's consideration of the Government's submission regarding the impact of the Rennick indictment, the Government is directed to make a report to the Court, *ex parte* and under seal in the first instance, as to the status of its relevant investigative and seizure activities, within 120 days from the date hereof and in any event within seven calendar days of any occurrence that obviates the need for continued redaction of any portion of the affidavits or declaration that remains under seal.

SO ORDERED.

### *EXHIBIT A*

Redacted pursuant to August 11, 2009, Opinion and Order

### *EXHIBIT B*

Redacted pursuant to August 11, 2009, Opinion and Order

---

ting closure than does the common law. *Lugosch*, 435 F.3d at 124 (remanding to the district court for performance of the balancing of interests). However, under the particular circumstances presented here, the balancing analysis would be identical under both frameworks. The First Amendment requires a Court to determine whether "closure is essential to preserve higher values" and, if so, make "specific, on the record findings" demonstrating that such a necessity exists and that the closure is "narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir.1987)). The law enforcement and investigative concerns on which the Court has made its common law balancing determinations are also "higher values" for purposes of

First Amendment access analysis. *See, e.g., East Side Ophthalmology*, 1996 WL 384891, at *3; *In re Search Warrant Executed February 1, 1995*, No. M 18–65(RJW), 1995 WL 406276 at *3 (S.D.N.Y. July 7, 1995); *In re Gunn*, 855 F.2d at 574. Here, as is appropriate in a First Amendment analysis, the Court has also narrowly tailored its decision to narrowly preserve these compelling countervailing interests, or higher values.

**9.** Any footnote within a redacted portion of text shall also be redacted.

**10.** Exhibits 1 and 3 are the June 2, 2009, and June 24, 2009, affidavits, respectively. These exhibits are to be redacted in the manner described herein.