**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                    v.

THE BUSINESS OF THE CUSTER
BATTLEFIELD MUSEUM AND STORE
LOCATED AT INTERSTATE 90, EXIT
514, SOUTH OF BILLINGS, MONTANA,
                    *Defendant,*

                    and

CHRISTOPHER KORTLANDER,
                    *Defendant-Appellant.*

No. 10-30222

D.C. No.
1:05-mj-00022-
RFC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Chief District Judge, Presiding

Argued and Submitted
June 8, 2011—Portland, Oregon

Filed September 30, 2011

Before: Raymond C. Fisher, Ronald M. Gould and
Richard A. Paez, Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

Penelope S. Strong, Penelope S. Strong Law Office, Billings, Montana, for the appellant.

Michael W. Cotter, U.S. Attorney, and Leif M. Johnson (argued), Assistant U.S. Attorney, Billings, Montana, for the appellee.

## OPINION

FISHER, Circuit Judge:

We decide whether the public has a common law or First Amendment right of access to materials filed in support of search warrant applications after an investigation has been terminated. We hold that a qualified common law right of access applies. We decline to reach the constitutional question.

### Background

Christopher Kortlander owns and operates the Custer Battlefield Museum in Garryowen, Montana. Beginning in 2005, the United States investigated Kortlander for unlawfully attempting to sell migratory bird parts and for fraudulently misrepresenting the provenance of historical artifacts for sale. During that investigation, two search warrants were executed (in 2005 and 2008), and the court sealed the affidavits supporting the warrant applications. The government ultimately declined prosecution of any criminal charges.

In 2010, Kortlander asked the district court for a copy of the search warrant applications and supporting affidavits. He initially sought "a personal copy of the entire file, *while leaving the file sealed to the public*." Later, however, he asked that the warrant applications be "ordered unsealed" and "fully disclosed." Citing cases discussing the public's qualified First Amendment right of access to judicial proceedings, he asserted that "search warrant papers are presumptively public judicial records," adding that "[u]nfettered disclosure is entirely appropriate and fitting in this case and should be effectuated forthwith."

The United States Attorney's Office initially opposed Kortlander's request in its entirety, citing the need to protect witness, informant and grand jury secrecy. The government's objections said that portions of the search warrant affidavits

"refer to witness testimony and documentary evidence collected by the grand jury, as well as informant statements[,] and identif[y] undercover officers."

Later, however, the government dropped its blanket objection to giving Kortlander access to the records, acknowledging that Kortlander and his attorney had already learned the "details of investigation in the course of negotiation" in the case, including "informant and undercover officer identities" and "grand jury material." "The government therefore no longer ha[d] concerns about disclosure of sensitive law enforcement and/or witness information."

Nonetheless, the government urged the court to "limit dissemination of the material to Kortlander's personal review and/or for inclusion in any future court filings," citing privacy interests of third parties. The government said:

> [C]oncerns have been raised that information collected by Kortlander may be posted on web sites. The Ninth Circuit has explained that "the privacy interests of the individuals identified in the warrants and supporting affidavits" supports the conclusion that warrant-related material not be made available for public dissemination. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989).
>
> Consequently, should the Court unseal the warrant applications in this matter, the government requests that any order limit dissemination of the material to Kortlander's personal review and/or for inclusion in any future court filings.

The district court granted Kortlander's request for access to the warrant materials, but limited Kortlander's access in accordance with the government's suggestions.[1] The court

---

[1]We treat the restrictions the district court imposed on Kortlander's use and dissemination of the materials as restrictions on his "access" to these

noted that "[t]he government does not object to the unsealing of the records for Kortlander's personal review and/or inclusion in future court filings, but does have concerns about the information being posted on websites." The court accordingly directed the government "to provide a copy to Kortlander's counsel for dissemination to Kortlander," but advised Kortlander "that the information is to be used only for personal review and/or inclusion in any future court filings. Kortlander is ordered not to post the warrant applications on any websites." The court did not make any findings — beyond citing unspecified "concerns" about Internet postings — articulating a justification for the restrictions imposed. Kortlander timely appealed.[2]

## DISCUSSION

[1] The law recognizes two qualified rights of access to judicial proceedings and records, a common law right "to inspect and copy public records and documents, including judicial records and documents," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted), and "a First Amendment right of access to criminal proceedings" and documents therein, *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986). Kortlander contends that he has a right to unfettered access to the search warrant materials under both standards. We address the common law question first.

---

documents as that term is used in connection with the common law and First Amendment principles governing access to judicial proceedings and documents.

[2]We reject the government's argument that Kortlander lacks standing to appeal because he has not asserted any concrete plans to post the warrant materials on the Internet, a fact Kortlander in any event disputes. Kortlander seeks a single remedy: access to the warrant materials. He indisputably has standing to seek that remedy, and we will not require him to establish standing for each component of that access that may be encompassed within the general remedy he seeks.

## I.   Common Law Right of Access

**[2]** The first step in any inquiry under the common law right of access is whether this right applies at all to the type of documents at issue. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("A narrow range of documents is not subject to the right of public access at all because the records have 'traditionally been kept secret for important policy reasons.' " (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989))). "Our case law has identified two categories of documents" that are not covered by the common law right of access: "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Id.* (citing *Times Mirror*, 873 F.2d at 1219). We review this threshold question de novo. *See Times Mirror*, 873 F.2d at 1212.

**[3]** Whether the common law right of access applies to warrant materials after an investigation has ended is a question of first impression in this circuit. We have held that the common law right of access does not apply to warrant materials "during the pre-indictment stage of an ongoing criminal investigation." *Id.* at 1221. But we expressly reserved whether the common law right of access applies to warrant materials after "an investigation has been terminated." *Id.* We answer that question today, and hold that, as the government concedes, the common law right of access applies under these circumstances.[3] In doing so, we join a number of courts that have reached the same conclusion. *See, e.g.*, *In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996); *In re Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989); *United States v. Wells Fargo Bank Account Number 7986104185*, 643 F.

---

[3]*Times Mirror* also reserved whether the public has a common law right of access to warrant materials when "an investigation is still ongoing, but an indictment has been returned." 873 F.2d at 1221. We have no occasion to address that question here.

Supp. 2d 577, 583-84 (S.D.N.Y. 2009); *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 92 (D.D.C. 2008); *Commonwealth v. Fenstermaker*, 530 A.2d 414, 417-19 (Pa. 1987); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575-76 (8th Cir. 1988) (Bowman, J., concurring).[4]

[4] We agree with these courts that warrant materials are "judicial records and documents." *Nixon*, 435 U.S. at 597 (recognizing a common law right "to inspect and copy public records and documents, including judicial records and documents"). In *Baltimore Sun*, the Fourth Circuit offered persuasive reasons for treating search warrant affidavits as judicial records:

> The requirement that warrants issue only upon oath or affirmation showing probable cause is embodied in the fourth amendment. A judicial officer must review the affidavit to determine whether the warrant should issue. This initial review is subject to further review by district and appellate courts upon motion to suppress the objects seized in the search.

---

[4]Though generally invoked by news organizations, the common law right of access to judicial records and documents "is a general right held by all persons." *In re EyeCare Physicians*, 100 F.3d at 517. It has been invoked, for example, by those with "a proprietary interest" in a document, by those who need a document "as evidence in a lawsuit," by citizens who "desire to keep a watchful eye on the workings of public agencies" and by news organizations seeking "to publish information concerning the operation of government." *Nixon*, 435 U.S. at 597-98.

Courts have applied the common law right of access to a variety of warrant-related materials. *See In re EyeCare Physicians*, 100 F.3d at 515 (search warrant application and affidavit); *In re Newsday*, 895 F.2d at 75 (same); *Baltimore Sun*, 886 F.2d at 62 (search warrant affidavit); *Wells Fargo*, 643 F. Supp. 2d at 579 (affidavits in support of warrants of seizure in rem); *In re N.Y. Times Co.*, 585 F. Supp. 2d at 86 (search warrant applications and affidavits); *Fenstermaker*, 530 A.2d at 415-16 (affidavits of probable cause in support of arrest warrants); *see also Gunn*, 855 F.2d at 570 (search warrant affidavits and related materials).

> Federal Rule of Criminal Procedure 41(g) directs the judicial officer to file the warrant and all papers in connection with it with the clerk of the district court. The papers are then available for use in a subsequent criminal trial if its sufficiency is questioned. We therefore conclude that affidavits for search warrants are judicial records.

886 F.2d at 63-64 (footnote omitted). "Affidavits in support of seizure or search warrants are central to a court's probable cause determination." *Wells Fargo*, 643 F. Supp. 2d at 583. They therefore "clearly fall within the definition of 'judicial documents.' " *Id.*; *see also Fenstermaker*, 530 A.2d at 418 ("[D]ocuments upon which a magistrate bases a decision to issue an arrest warrant are clearly judicial in character.").

We also agree with these courts that post-investigation warrant materials fall outside the "narrow range of documents [that are] not subject to the right of public access at all because the[y] have 'traditionally been kept secret for important policy reasons.' " *Kamakana*, 447 F.3d at 1178 (quoting *Times Mirror*, 873 F.2d at 1219). As we acknowledged in *Times Mirror*, 873 F.2d at 1213-14, 1218, warrant materials have not historically been accessible to the public during the *early stages* of criminal proceedings. "Warrant application proceedings are highly secret in nature and have historically been closed to the press and public." *Wells Fargo*, 643 F. Supp. 2d at 583; *see also Baltimore Sun*, 886 F.2d at 64 ("[P]roceedings for search warrants are not open to the public."); *Gunn*, 855 F.2d at 573 ("[H]istorically the process of issuing search warrants involves an *ex parte* application by the government and *in camera* consideration by the judge or magistrate. Moreover, the very objective of the search warrant process, the seizure of evidence of crime, would be frustrated if conducted openly.").

**[5]** Post-investigation, however, warrant materials "have historically been available to the public." *In re N.Y. Times*

*Co.*, 585 F. Supp. 2d at 88. "Search warrant applications . . . generally are unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery." *Wells Fargo*, 643 F. Supp. 2d at 581. "[A]lthough the process of *issuing* search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal." *Gunn*, 855 F.2d at 573 (emphasis added). In the post-investigation context, warrant materials have generally been open to the public.

**[6]** This tradition of openness "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re N.Y. Times Co.*, 585 F. Supp. 2d at 90. Warrant materials are also "often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures." *Id.* As the Eighth Circuit has observed, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Gunn*, 855 F.3d at 573; *see also Wells Fargo*, 643 F. Supp. 2d at 583 (stating that access to warrant materials "promotes the legitimate interests of the public and the press in 'keep[ing] a watchful eye on the workings of public agencies' " (alteration in original) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995))).

**[7]** For these reasons, we hold that the public has a qualified common law right of access to warrant materials after an investigation has been terminated. In doing so, we decline to extend *Times Mirror* to post-investigation access. In *Times Mirror*, we were concerned primarily with the impact disclosure would have on an *ongoing criminal investigation*. We said:

> First, and most obviously, if the warrant proceeding itself were open to the public, there would be the

obvious risk that the subject of the search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed. Additionally, if the proceeding remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction.

*Times Mirror*, 873 F.2d at 1215. These are important concerns, but they are not as relevant once an investigation has been terminated. The other concerns we identified in *Times Mirror*, particularly "the privacy interests of the individuals identified in the warrants and supporting affidavits," *id.* at 1216, are also important, but, in a particular case involving materials subject to the common law right of access, they may be redressed through a court's discretion either to release redacted versions of the documents or, if necessary, to deny access altogether, as we discuss below.

Having held that the right of access applies to post-investigation warrant materials, we must next decide whether the district court properly granted Kortlander only limited access to the warrant materials in this case.

**[8]** When the common law right of access applies to the type of document at issue in a particular case, "a 'strong presumption in favor of access' is the starting point." *Kamakana*, 447 F.3d at 1178 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by . . . 'articulat[ing] compelling reasons' . . . that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178-79 (quoting *Foltz*, 331 F.3d at 1135). "In turn, the court must 'conscientiously balance[ ] the competing interests' of the public and the party who seeks to keep certain judicial records secret."

*Id.* at 1179 (alteration in original) (quoting *Foltz*, 331 F.3d at 1135). "After considering these interests, if the court decides to seal certain judicial records, it must 'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.' " *Id.* (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "Where the district court conscientiously undertakes this balancing test, basing its decision on compelling reasons and specific factual findings, its determination will be reviewed only for abuse of discretion." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1102 (9th Cir. 1999).[5]

---

[5]With respect to warrant materials, courts have recognized several concerns that may call for redaction of the materials or withholding of disclosure outright. These concerns include the need to protect an ongoing investigation, *see In re EyeCare Physicians*, 100 F.3d at 519; *Times Mirror*, 873 F.2d at 1215; *Gunn*, 855 F.2d at 574; *Wells Fargo*, 643 F. Supp. 2d at 585-86; *In re N.Y. Times Co.*, 585 F. Supp. 2d at 93; *Fenstermaker*, 530 A.2d at 420, the need to protect the identities and safety of confidential informants, *see In re EyeCare Physicians*, 100 F.3d at 518 n.5; *In re N.Y. Times Co.*, 585 F. Supp. 2d at 91; *Fenstermaker*, 530 A.2d at 420, privacy interests, *see In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 373-74 (9th Cir. 2002); *In re Newsday*, 895 F.2d at 79-80; *Times Mirror*, 873 F.2d at 1216; *In re N.Y. Times Co.*, 585 F. Supp. 2d at 91, the need to safeguard the Sixth Amendment fair trial rights of the accused, *see Fenstermaker*, 530 A.2d at 420, and the need to protect the secrecy of grand jury proceedings, *see In re EyeCare Physicians*, 100 F.3d at 518-19. In many cases, courts can accommodate these concerns by redacting sensitive information rather than refusing to unseal the materials entirely. *See, e.g.*, *In re Newsday*, 895 F.2d at 80 (redacting documents to protect the privacy interests of innocent third parties); *Baltimore Sun*, 886 F.2d at 66 (indicating that a court should consider redaction before denying access altogether); *Wells Fargo*, 643 F. Supp. 2d at 585-86 (redacting materials to protect the government's ongoing investigation); *In re N.Y. Times Co.*, 585 F. Supp. 2d at 86 & n.1, 91 (redacting information to protect confidential informants); *cf. In re EyeCare Physicians*, 100 F.3d at 516, 519 (considering redaction as an alternative to denying access altogether); *Gunn*, 855 F.2d at 574 (discussing redaction in connection with the First Amendment right of access).

**[9]** The restrictions the district court imposed here do not conform to the standards we articulated in *Kamakana*. Although the court ruled that Kortlander may not "post the warrant applications on any websites," it did not articulate a "compelling reason" for these limitations or a "factual basis for its ruling." *Kamakana*, 447 F.3d at 1179. The restrictions therefore cannot be sustained.

Even when we look past the district court's order to the underlying government briefs upon which the district court relied, we do not find a compelling reason or a factual basis for the restrictions. The government's district court brief said only that "concerns have been raised that information collected by Kortlander may be posted on web sites," and cited the general principle that individuals identified in warrants have privacy interests that may justify denying access. The government's brief did not explain what concerns had been raised, whether they were concrete rather than conjectural or how they constituted a compelling reason for restricting Kortlander's access to the warrant materials.

**[10]** Under these circumstances, we hold that the district court abused its discretion by limiting Kortlander's access to the warrant materials. We therefore vacate the court's order and remand for the district court to reconsider the application of the common law right of access in this case, applying the correct legal standard. In applying this standard, the court should balance the public's interest in disclosure against any countervailing concerns that may apply. But the court may not restrict access to the documents without articulating both a compelling reason and a factual basis for its ruling.

## II.  First Amendment Right of Access

Kortlander argues in the alternative that he is entitled to unrestricted access to the warrant materials under the First Amendment right of access to judicial proceedings. Whether this right of access applies to warrant materials after an inves-

tigation has ended is also a question of first impression in this circuit. In *Times Mirror*, we held that the "public has no qualified First Amendment right of access to warrant materials during the pre-indictment stage of an ongoing criminal investigation," but we expressly reserved whether the public has a constitutional right of access after "an investigation has been terminated." *Times Mirror*, 873 F.2d at 1221.[6]

We decline to decide the question reserved in *Times Mirror* at this time. First, it has not been addressed by the district court, and we ordinarily prefer the district court to address issues in the first instance. Second, the district court may be able to resolve this case on remand by applying the common law right of access alone, without the need to address the First Amendment question. We prefer to "avoid reaching constitutional questions in advance of the necessity of deciding them." *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)) (internal quotation marks omitted). The First Amendment question is therefore reserved.

---

[6]Although there are a number of court decisions addressing whether the First Amendment right of access applies to warrant materials during or after an investigation, they have not always reached identical conclusions. *See Gunn*, 855 F.2d at 572-75 (holding that the public has a qualified First Amendment right of access to warrant materials, even while an investigation is ongoing); *In re Newsday*, 895 F.2d at 75 (declining to decide "whether . . . the press has a constitutional right of access to documents contained in search warrant applications"); *Baltimore Sun*, 886 F.2d at 62 (holding that the public does not have "a qualified [First Amendment] right of access to inspect and copy affidavits supporting search warrants in the interval between execution of the warrants and indictment"); *Wells Fargo*, 643 F. Supp. 2d at 583 (holding that a media organization had no First Amendment right of access to seizure warrant information while an investigation was ongoing); *In re N.Y. Times Co.*, 585 F. Supp. 2d at 90 (holding that the public has a qualified First Amendment right of access to warrant materials after an investigation has been completed).

## CONCLUSION

We hold that the public has a qualified common law right of access to warrant materials after an investigation has been terminated. The district court properly recognized that right here, but the court erred by granting Kortlander only *restricted* access to the warrant materials without articulating a compelling reason for its ruling or making specific factual findings. The district court's order is therefore vacated, and the matter is remanded to the district court to reapply the common law standard to Kortlander's request.

**[11]** We decline to decide whether the public has a qualified First Amendment right of access to warrant materials after an investigation has been terminated. In the event that the court denies Kortlander unrestricted access to the warrant materials under the common law, the court should decide in the first instance whether the First Amendment right applies to post-investigation warrant materials and, if so, whether Kortlander is entitled to unrestricted access under the First Amendment standard.[7]

---

[7]The First Amendment is generally understood to provide a stronger right of access than the common law. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). We have held that "criminal proceedings and documents may be closed to the public without violating the first amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1466 (9th Cir. 1990); *see also Times Mirror*, 873 F.2d at 1211 n.1 ("Even when the public enjoys a First Amendment right of access to a particular proceeding, the public still can be denied access if closure 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.' " (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984))).

Costs of appeal are awarded to the appellant.

**VACATED and REMANDED.**